MARS MUSICAL ADVENTURES, INC.
a Wisconsin corporation, Plaintiff,

v.

MARS, INC., a Florida corporation
Defendant.

Civil No. 99–669MJDJGL.

United States District Court,
D. Minnesota.

Aug. 16, 2001.

Rita Coyle DeMeules, Robins Kaplan Miller & Ciresi, Minneapolis, MN, Alan Gary Carlson, Anthony Richard Zeuli, Merchant & Gould, Minneapolis, MN, James Robert Andreen, Erstad & Riemer, Minneapolis, MN, for plaintiff.

Ann Dunn Wessberg, Faegre & Benson, Minneapolis, MN, Thomas H. Boyd, Winthrop & Weinstine, St.Paul, MN, Heidi Howard Tandy, Ryan F. Urness, for defendant.

## MEMORANDUM OPINION AND ORDER

DAVIS, District Judge.

Plaintiff Mars Musical Adventures ("MMA") sued Defendant Mars, Inc. ("Mars") for federal trademark infringement, federal and common law unfair competition, and violation of the Minnesota Deceptive Practices statute. Mars counterclaimed, alleging a violation of the Anti–Cybersquatting Act, arising from Plaintiff's use of the Internet domain name "mars-music.com." Mars now moves for summary judgment on MMA's claim, and MMA moves for summary judgment on Mars' counterclaim. For the following reasons, the Court will grant Defendant's motion, and deny Plaintiff's motion.

### Background

Plaintiff MMA is a small "mom and pop" music supply store located in Hudson, Wisconsin, offering vintage music equipment, instruments, recording services and lessons since 1995. MMA asserts that it has common law ownership over the trademarks "Mars Music" and "Mars Musical Adventures" (with and without logo). Uncontested evidence submitted by Defendants shows that about 50% of MMA's sales are to customers within 50 miles of Hudson, with approximately 75% living within a geographic area of 15 miles of Hudson. Williams Report at 6. In 1998, MMA acquired and registered the internet domain name "mars-music.com," and began using it as its principal web-site address.

Defendant Mars is a nationwide chain of "superstores" that offers a large inventory of musical instruments (new and vintage), supplies, lessons, and recording services. In 1996, Mars filed a Trademark Intent–to–Use Application with the U.S. Patent Office for the marks "Mars Music Superstore." "Mars Music and Recording Superstore," and "Mars the Musician's Planet and Design." In November 1999, Mars filed an Intent–to–Use application for the mark "Mars Music." In late 1996, Mars acquired and registered the Internet do-

main name "marsmusic.com," and began using it as its principal website address. Mars moved into the Minneapolis metro area in 1999, with stores in Roseville, Minnesota, Bloomington, Minnesota, and Milwaukee, Wisconsin.

In March, 1999, counsel for Mars sent a letter to MMA, demanding that MMA "cease and desist" from using the domain name "mars-music.com." MMA responded by filing this suit against Defendant, alleging trademark infringement and violations of unfair competition law. During settlement negotiations, MMA offered to sell the "mars-music.com" name for $650,000 to Defendant, which prompted Defendant to counterclaim for a violation of the Anti–Cybersquatting Act. Each party now moves for summary judgment on the other party's claim.

### Standard

Summary judgment as a matter of law is appropriate when no genuine issue of material fact exists in the record. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if resolving disputes concerning that fact affects the outcome of the case. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A dispute is genuine if, based on the evidence, a reasonable jury could return a verdict for either party. *See id.* at 252, 106 S.Ct. 2505. On a motion for summary judgment, the Court views all evidence and inferences in a light most favorable to the nonmoving party. *See id.,* 477 U.S. at 250, 106 S.Ct. 2505. The moving party carries the burden to demonstrate the absence of any genuine issue of material fact. Fed. R.Civ.P. 56(b); *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

### Analysis

#### I. Plaintiff's Claim for Trademark Infringement

MMA's claim includes separate counts for federal trademark infringement and unfair competition, § 43 of the Lanham Act, 15 U.S.C. 1125(a)(1), as well as common law unfair competition, and state deceptive trade practices, Minn.Stat. 325D.44, subd. 1(2), 3 & 13. Because the necessary elements of the common law and state statutory law claims are intimately connected to the federal statutory claim, the Court will consider that claim first.

#### A. Lanham Act Violations

■ Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a)(1), creates a civil cause of action for trademark infringement. In order to prove a violation of the Lanham Act, a plaintiff must prove first that it has a right in the marks that the law will protect, and second that Defendant's use of the marks is likely to cause confusion. *See Dream Team Collectibles v. NBA Properties, Inc.,* 958 F.Supp. 1401, 1411 (E.D.Mo.1997).

■ Plaintiff asserts that it has a right in the marks "Mars Music" and "Mars Musical Adventures" through its common law trademark ownership of them. A common law trademark arises from the adoption and actual use of a word, phrase, logo, or other device to identify goods or services with a particular party. *See First Bank v. First Bank System, Inc.,* 84 F.3d 1040, 1044 (8th Cir.1996). Use must be more than "small, sporadic or inconsequential." *Sweetarts v. Sunline, Inc.,* 380 F.2d 923, 928 (8th Cir.1967).

##### a) "Mars Music"

■ In order to establish common law ownership of the phrase "Mars Music," Plaintiff must prove two things: 1) that it

actually used the phrase in connection with its music store and services provided in the relevant geographic areas; and 2) that the phrase "Mars Music" identified Plaintiff as the provider of those services in the minds of consumers. *See id.* MMA asserts that it meets the first prong of the test because it "used" the mark before Defendant and therefore it automatically gains common law ownership.

■ The Court finds that this assertion is not supported by the record. Plaintiff has not demonstrated more than casual use of the term "Mars Music." *See Sweetarts*, 380 F.2d at 926. MMA's claims regarding its business history and market penetration almost all apply to use under the name "Mars Musical Adventures." None of Plaintiff's advertising uses the mark to "Mars Music"; the store's sign, telephone listings, business cards, newspaper ads, brochures and direct mailings all refer to the business as Mars Musical Adventures. The only exceptions submitted to the Court are a few invoices with "Mars Music" at the top, the most recent of which is dated August, 1996, and a 1995 application for a federal employer identification number which lists "Mars Music" as an alternate trade name. Plaintiff's 1998 registration of its domain name "mars-music.com," occurred after Defendant's registration of its domain name in 1997, and therefore cannot be considered for the purposes of "prior use" analysis. Nowhere else on the web site itself are the words "Mars Music" contained.

The Court finds therefore that Plaintiff has not met the first prong of the common-law trademark analysis, "use," of the mark "Mars Music". Even assuming, arguendo, that Plaintiff has shown use of the mark, it has offered no credible evidence to meet the second prong of the test, proof that the mark "Mars Music" is identified in the minds of consumers with the provider of those services in the minds of consumers.

Without ownership of the mark "Mars Music." Plaintiff cannot sustain its statutory or common law allegations as to that mark. The Court will therefore turn to the allegations as they pertain to the mark "Mars Musical Adventures."

### b) *"Mars Musical Adventures"*

For the reasons listed above, MMA has demonstrated common law ownership of the mark "Mars Musical Adventures." In order to prevail on a claim of trademark infringement under the Lanham Act, a plaintiff must also show that the allegedly infringing mark is " 'likely to cause confusion, or mistake, or to deceive' potential...customers." *Empi v. Iomed, Inc.*, 923 F.Supp. 1159, 1166 (D.Minn.1996), *citing* 15 U.S.C. § 1114(1)(b).

■ Plaintiffs claim that Defendant's use of the marks "Mars Music" (with and without logo), "Mars Music Superstore," "Mars Music and Recording Superstore," and "Mars the Musician's Planet" (with and without logo) has led to "reverse confusion." Reverse confusion occurs when "a larger, more powerful company uses the trademark of a smaller, less powerful senior owner and thereby causes likely confusion as to the source of the senior user's goods or services." ' *Rainforest Café, Inc. v. Amazon, Inc.*, 86 F.Supp.2d 886, 897 (D.Minn.1999), *citing Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 474 (3d Cir.1994).

■ When evaluating likelihood of confusion, a court must consider: 1) the strength of the mark; 2) similarity between the two marks; 3) competitive proximities; 4) alleged infringer's intent to confuse; 5) evidence of actual confusion; 6) degree of care expected of potential customers. *See Duluth News–Tribune v. Mesabi Publishing Co.*, 84 F.3d 1093, 1096 (8th Cir.1996). In a case of reverse confu-

sion, this analysis is modified as necessary. *See Rainforest Café*, 86 F.Supp.2d at 898.

These factors are to be considered by the Court as a guide, "to determine if a reasonable jury could find a likelihood of confusion." *Duluth News–Tribune*, 84 F.3d at 1096. Furthermore, "[w]hether likelihood of confusion exists is ultimately an issue of fact, however, factual disputes regarding a single factor do not preclude a court from entering summary judgment." *Dream Team*, 958 F.Supp. at 1411, *citing Duluth News–Tribune*, 84 F.3d at 1096. The Court will consider each factor in turn.

### 1) *Strength of the Mark:*

■ To determine the relative strength of a mark, the Court must examine the mark's degree of inherent conceptual distinctiveness and its commercial strength in the marketplace. *See Rainforest Café*, 86 F.Supp.2d at 898. Conceptual distinctiveness is analyzed to determine whether a plaintiff's mark is strong enough to merit trademark protection. *See Insty Bit, Inc. v. Poly–Tech Industries, Inc.*, 95 F.3d 663, 672 (8th Cir.1996). To do so, the mark must be classified into one of four categories: i) generic, ii) descriptive, iii) suggestive, or iv) arbitrary or fanciful. *See Duluth News–Tribune*, 84 F.3d at 1096. A generic mark is one that is used by the general public to identify a category of goods, and is afforded no protection. An arbitrary or fanciful mark is the strongest type and enjoys the highest level of protection. *Id.* Suggestive marks require some amount of imagination to reach a conclusion regarding the nature of the product, while a descriptive mark immediately conveys the nature or function of the product. The Court finds that the mark "Mars Mu-

sical Adventures," is properly described as suggestive, and therefore deserving of some trademark protection.

In a case of reverse confusion, the Court should analyze the commercial strength of the mark at the time of the initial alleged infringement (in this case, February, 1999, when Defendant opened its Bloomington store), rather than on the basis of the strength resulting from the allegedly infringing use. *See Rainforest Café*, 86 F.Supp.2d at 898. This factor is of less importance in a reverse confusion case than in a forward confusion case. *See Dream Team Collectibles*, 958 F.Supp. at 1412, *citing Fisons Horticulture, Inc.*, 30 F.3d at 479.

MMA offered the following evidence of the extent of media and advertising coverage received by its mark "Mars Musical Adventures" (with and without logo): telephone directory listings in the St. Croix Valley, Hudson, St. Paul, and the Twin Cities Driver Yellow Pages, periodic print advertising in small local periodicals,[1] direct mail to customers on an in-house mailing list, and on-air radio promotions in conjunction with a 1997 sponsorship of rock concert. Plaintiffs have submitted no data regarding market share or customer surveys regarding awareness of the marks.

Plaintiff's advertising expenditures have averaged under $1,000/year. Plaintiff has not promoted its goods on television, radio or any major newspapers in the Twin Cities or Milwaukee areas. While Plaintiffs claim to have moved to Hudson Wisconsin in 1995 to "get to the Minneapolis Market" (Johnson depo. at 61), they have not registered to do business in Minnesota, and have presented no evidence of customer sales volume in the Minneapolis area. The

---

1. For example, the Tradin' Post, River Falls Student Voice, Stillwater High School newspaper, and Hudson newspaper. Plaintiffs also submitted a classified advertising form submitted to the City Pages weekly circular in 1998, which was ordered to run for three weeks.

Court is mindful that the relative size of Plaintiff's volume of business should not be prejudicial, and yet the evidence is nonetheless unconvincing as to the strength of the "Mars Musical Adventures" trademark. *See Sweetarts*, 380 F.2d at 928.

This factor weighs in favor of a finding against likelihood of confusion, although the Court will not weigh this factor as heavily as it might in a forward confusion case.

### 2) *Similarities Between the Marks*

In the Eighth Circuit, the use of dominant identical words in common does not mean that the two marks are similar; the Court must evaluate the impression each mark leaves in its entirety. *See Duluth News–Tribune*, 84 F.3d at 1097. Aurally, the marks are distinguishable. Plaintiff's mark, "Mars Musical Adventures," when pronounced aloud, stresses the second and third words. Defendant's marks, "Mars the Musician's Planet," "Mars Music," "Mars Music Superstore" and "Mars Music and Recording Superstore" stress the words "Planet" and "Music" and "Superstore"; they are thus aurally distinguishable from Plaintiff's mark.

Visually, the logos for "Mars Musical Adventures" and "Mars the Musician's Planet" do have some similarities; both feature lettering that surrounds a reddish orange sphere on a black field. There are differences as well. In Plaintiff's logo, the word "Mars", written in slightly blurry red type, is deemphasized, as it is wrapped around the lower left portion of the sphere. Defendant's logo emphasizes the word "Mars" in bold orange capital letters, across the planet, in type size larger than the words "The Musician's Planet". *See Duluth News–Tribune*, 84 F.3d at 1097 (giving weight to distinctive type fonts and colors in avoiding likelihood of confusion). The other difference is that Plaintiff's logo includes a figure riding a rocket, and some versions contain the word "U.S.A." at the bottom. The logo for Defendant's mark "Mars Music" is entirely different: the word "Mars" is in large red letters on a blue field, with the word "Music" much smaller, in white. The Court finds that these distinctions, taken in their entirety, would serve as notice to the average customer that the two stores are not the same, and thus this factor weighs against a finding of likelihood of confusion.

### 3) *Competitive Proximity of the Marks:*

Defendant is a large, national chain (with "concert-size" facilities) which offers an extensive inventory and well-funded advertising budget. Plaintiff is a small, single store which offers a limited inventory focused on vintage guitars and amplifiers. Plaintiff argues that the two parties are competing for the same customers, with nearly identical inventory, including brand name electric and acoustic guitars, electric amplifiers, bass amps, drums and drum accessories, microphones, mixers and vintage instruments.

This factor weighs slightly in favor of Plaintiff. While Defendant offers a much broader variety of inventory than Plaintiff, and provides services to customers who are not served by Plaintiff, most or all of Plaintiff's customers could be served by Defendant. *But see Dream Team Collectibles*, 958 F.Supp. at 1414 ("the significance of this factor may decrease in a reverse confusion case").

### 4) *Evidence of Actual Confusion*

■ Proof of actual confusion can provide positive evidence of a likelihood of confusion. *See Empi.*, 923 F.Supp. at 1168. In reverse confusion cases, only admissible evidence can be considered by the Court at the summary judgment stage. *See Duluth News–Tribune*, 84 F.3d at 1098. Plaintiff has offered affidavits of

actual confusion in the form of misdirected e-mails, telephone calls, four personal inquiries and misdirected mail. The Court finds that the evidence of e-mails, telephone calls and misdirected mail is inadmissible hearsay, offered for the truth of the matter asserted. *See Id.* ("[V]ague evidence of misdirected phone calls and mail is hearsay of a particularly unreliable nature given the lack of an opportunity for cross examination...regarding the reason for the 'confusion' ").

In reverse confusion cases, the "relevant confusion to be avoided is that which affects purchasing decisions, not confusion generally." *Dream Team Collectibles,* 958 F.Supp. at 1415. An analysis of each of the affidavits submitted by Plaintiff leads the Court to conclude that none supports a finding of actual confusion, and that the number is so low as to be de minimis.

This factor weighs in favor of Defendant. The confusion was minimal and easily corrected, and Plaintiffs have offered no evidence of purchasing decisions that were affected by the confusion.

5) *Alleged Infringer's Intent to Confuse.*

In a reverse confusion case, the "intent" inquiry is whether, despite acting innocently, the alleged infringer was careless in not conducting proper research, to avoid infringement, prior to development of its trademark. *See Rainforest Café,* 86 F.Supp.2d at 900 (internal citations omitted). Unlike in a traditional forward confusion case, the "passing off" factor of the inquiry does not apply in a reverse confusion case. *Id* at 899. The senior user is not trying to trade on the good will and name of the senior user; instead he overwhelms it. *See Dream Team Collectibles,* 958 F.Supp. at 1415. Courts in this District have adopted a Third Circuit intent inquiry to determine if Defendants intended to infringe, by asking the following: 1) have Defendants conducted an adequate name search for other companies marketing similar goods under the mark in question; 2) have they followed through with the investigation when other such companies were found; 3) have they considered the likelihood of confusion with other companies' marks and products; 4) have they attempted to contact companies using a similar mark; 5) were they careless in their evaluation of the likelihood of confusion. *Id.* at 1415, *citing Fisons,* 30 F.3d at 480.

Defendants submitted sufficient evidence to show that they conducted an adequate trademark search for the marks "Mars Music Superstore," "Mars the Musician's Planet" and "Mars Music". Deposition testimony indicates that Mars Music's officials were reasonably involved with counsel, investigating the marks of other companies that might lead to confusion. *See, e.g.,* Zobel depo at 81–84. The search revealed Plaintiff's business, "Mars Musical Adventures," located in Hudson, Wisconsin (more than 30 miles away from Defendant's proposed site). Pl.'s Ex. 30, at M01208; Ex. 31, at M01707. Plaintiff's name did not arise in the trademark search for "Mars Music." Mars Music submitted evidence regarding contacts made with at least one other company using similar marks, Mars, Inc., the candy manufacturer. The Court credits the testimony of Mars Music's officials regarding the steps taken to evaluate likelihood of confusion. Zobel dep. 81–84; 105–110. Finally, Mars Music's counsel promptly contacted Plaintiff when he learned that Plaintiffs had registered the "mars-music.com" domain name.

MMA has presented insufficient evidence that Defendants were careless in their evaluation of the likelihood of confusion. The Court finds that this factor weighs against a finding of likelihood of confusion.

**6) *Degree of Care Reasonably Expected of Potential Customers***

The Court should also consider the types of products at issue, and whether consumers could be expected to devote substantial time and effort to making purchasing decisions. As a general rule, the greater the cost of the product or service, the more time and effort consumers are expected to expend when making decisions, and therefore the likelihood of confusion decreases. *See Duluth News–Tribune*, 84 F.3d at 1099; *Rainforest Café*, 86 F.Supp.2d at 903. Plaintiffs argue that in reverse confusion cases, greater care by purchasers may weigh in favor of finding likelihood of confusion, because the purchaser who takes more care may choose not to purchase the product based upon his or her concern that it is the product of an unauthorized infringer. *See Dream Team Collectibles*, 958 F.Supp. at 1417. This argument is unavailing in this situation, however, because here the products themselves are the same; the confusion to be avoided is between the stores selling the products. A customer purchasing a moderate or high priced product which requires sales help or sophistication in selection is less likely to be confused about where she is shopping.

The products sold by both companies are not inexpensive, and call for a higher than average degree of sophistication and consideration in making the purchases, given the wide array of options and product lines. The Court finds that in this case, the type of products sold, and the level of involvement of consumers with these products, indicate that customers will take more time and effort in their purchase decisions.

Taking these six factors as a group, the Court finds that no real factual question exists, the resolution of which would lead a reasonable jury to find a likelihood of confusion. Plaintiff's trademark, although deserving of some protection, is relatively weak. Although there are some similarities between two of the logos, the marks look and sound sufficiently different to alert consumers. The remaining factors balance in Defendant's favor: proof of actual confusion is de minimus, and there is insufficient evidence of carelessness on Defendant's part. The Court therefore grants summary judgment to Defendants on this issue.

**B. *Common Law Unfair Competition and Deceptive Trade Practices Claims***

In order to prevail on a violation of the Minnesota Deceptive Trade Practices Act, a plaintiff must show likelihood of confusion. Minn.Stat. § 325D.44. Likelihood of purchase confusion is also an element of common law unfair competition. *See The Minneapple Co. v. Normandin*, 338 N.W.2d 18, 22 (Minn.Sup.Ct.1983). The Court's grant of summary judgment to Defendants on the issue of likelihood of confusion necessitates dismissal of these claims as well.

**II. *Defendant's Counter Claim for Cybersquatting***

Defendants acquired the address "marsmusic.com" (without the hyphen) for $3,000 in 1996, and registered the name immediately with Network Solutions. Defendants have used the name continuously for its web site since then. Plaintiffs obtained the name "mars-music.com" (with the hyphen) in September, 1998, and registered the name with Network Solutions. Defendants argue that Plaintiff's use of the domain name has improperly diverted customers to Plaintiff's site. When Defendants demanded that Plaintiffs use a different name, Plaintiffs indicated a willingness to do so for a consideration of

$650,000. This amount, argue Defendants demonstrates a bad faith intent to profit.

The Anti–Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d)(1)(B)(i), creates civil liability when a person, acting with a bad faith intent to profit from a protected mark, registers, traffics in, or uses a domain name that a) is distinctive at the time of registration of the domain name; b) is identical or confusingly similar to that mark; or c) is a protected trademark. Bad faith can be determined by considering a list of nine factors.[2]

The Court finds that genuine issues of material fact exist as to this claim, making a grant of summary judgement inappropriate. Based on a review of all the files, records, and proceedings herein, the Court therefore GRANTS Defendant's motion and DENIES Plaintiff's motion.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's motion for summary judgment is GRANTED.

2. Plaintiff's motion for summary judgment is DENIED.

---

2. "In determining whether a person has a bad faith intent described under subparagraph (a), a court may consider factors such as, but not limited to:
(I) the trademark or other intellectual property rights of the person, if any, in the domain name; (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person; (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site; (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct; (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct; (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others . . . .; (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of this section." 15 U.S.C. § 1125(d)(1)(B)(i).