**Mr. Leslie DAVIS, Earth Protector Licensing Corporation, and Earth Protector, Inc., Plaintiffs,**

v.

**The WALT DISNEY COMPANY, Disney Channel, and ABC, Inc., Defendants.**

No. Civ.041749(DWF/SRN).

United States District Court, D. Minnesota.

March 8, 2005.

Nathan A. Busch, Busch Law Firm, St. Louis Park, MN, for Plaintiffs.

Paul B. Klaas, Sri K. Sankaran, and Heather D. Redmond, Dorsey and Whitney LLP, Minneapolis, MN, for Defendants.

## MEMORANDUM OPINION AND ORDER

FRANK, District Judge.

### Introduction

The above-entitled matter came before the undersigned United States District Judge on January 28, 2005, pursuant to the Motion for Summary Judgment brought by Defendants The Walt Disney Company, Disney Channel, and ABC, Inc. (collectively, "Defendants"), and the Motion for Summary Judgment brought by Plaintiffs Mr. Leslie Davis, Earth Protector Licensing Corporation, and Earth Protector, Inc. (collectively, "Plaintiffs"). For the reasons set forth below, Defendants' Motion for Summary Judgment is granted; Plaintiffs' Motion for Summary Judgment is denied.

### Background

The facts of this case, culled from the Court's Memorandum, Opinion, and Order of August 23, 2004, are as follows: Plaintiffs allege they were injured when Defendants broadcast "Up, Up, and Away," a television movie about a family of suburban superheroes who uncover and thwart the plot of the diabolical president of an environmental software company, "Earth Protectors." The movie was initially broadcast in January 2000, and it has been rebroadcast approximately 50 times since.

The plot of "Up, Up, and Away" is briefly summarized as follows: A software developer at "Earth Protectors" has created software that can control the minds of children. The software was originally intended to be used for good, but the evil president of "Earth Protectors," Malcolm, instead attempts to use the software to achieve world domination. Malcolm starts by using the software on a bank teller during a robbery. Eventually, Malcolm distributes the software to school-aged children as "homework" in an effort to control their minds and to compel the students to steal money from their families and deliver it to Malcolm. One of the students who receives the "homework" is Scott Marshall, the youngest child in a family of superheroes. However, Scott Marshall has not developed superpowers like his other family members, such as the ability to fly, shoot electricity from his fingertips, or use x-ray vision. Malcolm uses mind control on Scott to discover that his superhero family members are deathly afraid of aluminum foil. Using this knowledge to his advantage, Malcolm lures Scott's family to a phony rescue, where Malcolm traps them in a cage made out of aluminum foil. Even without superhuman powers, Scott and his friends ultimately thwart the mind control plan and save the day. Presumably, at the end of the movie "Earth Protectors" returns to its noble pursuits.

Plaintiff Leslie Davis is a real-life political activist and environmentalist. Plaintiffs provide a variety of educational and advocacy services and materials related to the promotion of environmental protection and social betterment.

Although "Up, Up, and Away" is a children's fantasy movie that features a fictional entity called "Earth Protectors," Plaintiffs allege that the movie's use of "Earth Protectors" has, among other things, created a likelihood of confusion. Plaintiffs further contend that Defendants' movie infringed Plaintiffs' copyrighted material.

On August 23, 2004, this Court entered an Order granting Defendants' Motion to Dismiss Plaintiffs' trademark dilution and

defamation claims. In that Order, the Court stated:

Because Plaintiffs allege that they have used the 'Earth Protector' mark in connection with television movies, this Court cannot determine that its goods and services are not so wholly unrelated to Defendants' goods that, as a matter of law, there is no likelihood of confusion. On this point, discovery is necessary.

*Davis v. Walt Disney Co.*, No. 04–1729, 2004 WL 1895234 at *4 (D.Minn. Aug. 23, 2004). Plaintiffs' remaining claims include: (1) infringement and contributory infringement of a federally registered trademark (15 U.S.C. § 1114); (2) trademark infringement and false designation of origin (15 U.S.C. § 1125(a)); and (3) infringement of a federally registered copyright (17 U.S.C. § 101, *et seq.*).[1]

## I. Trademark History

Plaintiff Earth Protector Licensing Corporation registered a trademark, registration number 1,330,941, on April 16, 1985, that claimed rights to "Earth Protector" in connection with t-shirts. (*See* Redmond Decl. Ex. A at 36.) Defendants contend that this registration was abandoned in 1992. (*See* Defendants' Memorandum in Support of Motion for Summary Judgment at 5.)

In 1993, Plaintiffs applied to register "Earth Protector" for a broader range of goods and services including Class 41, the class that encompasses television broadcasting, video presentations, and educational and video services. (*See* Redmond Decl. Ex. A at 32, 64, and 71.) Plaintiffs acknowledged abandoning this application. (*See id.*, Ex. A at 27.)

In 1995, Plaintiffs applied for and registered the "Earth Protector" mark for Class 16 ("printed reports, booklets, pamphlets and magazines whose subject matter includes solid waste recycling, energy management, fuel development, acid rain and lead poisoning") and Class 25 ("clothing, namely sweatshirts, t-shirts, jeans, caps and sneakers"). (*See* Redmond Decl. Ex. A at 7.) However, Plaintiffs did not apply for Class 41 registration as to television broadcasting, television shows, or movies. (*See id.* at 24; Davis Dep. at 43–44.)

## II. Plaintiffs' Use of "Earth Protector"

Pursuant to the Court's August 23, 2004, Order, the parties conducted discovery as to Plaintiffs' use of "Earth Protector" on television. (*See* October 8, 2004, Scheduling Order.) According to Davis, Plaintiffs produced a series of eight television shows called "The Earth Protector Show" that were broadcast "a number of times" on Minneapolis Telecommunications Network, Saint Paul Neighborhood Network, and Metro Cable Network in 1991. (*See* Declaration of Heather Redmond ("Redmond Decl."), Ex. A (Deposition of Leslie Davis ("Davis Dep.")) at Ex. 3.) Davis also asserts that the show was broadcast into 1992, and even possibly as late as 2001, but has no "actual evidence" that the show was played beyond 1991. (*See* Davis Dep. at 12–17.)

## III. Likelihood of Confusion

Plaintiffs have submitted several affidavits in support of their contention that a likelihood of confusion exists between Defendants' movie and Plaintiffs' trademark 'Earth Protector.' (*See* Declaration of Na-

---

**1.** Pursuant to the Report and Recommendation of Magistrate Judge Susan Richard Nelson, dated February 23, 2005, and this Court's subsequent Order adopting that Report and Recommendation dated March 8, 2005, the Court granted Plaintiffs' request to voluntarily dismiss counts four, six, and eight of Plaintiffs' Complaint.

than A. Busch in Opposition to Defendants' Motion to Dismiss at Exs. II.E, II.F, and II.G; Declaration of Nathan A. Busch in Support of Cross–Motion for Summary Judgment at Exs. V.D.1–V.D.7; Declaration of Nathan A. Busch in Opposition to Defendants' Motion for Summary Judgment.) Plaintiffs submit that their affiants experienced actual confusion upon viewing Defendants' movie and that this is "proof positive" of a likelihood of confusion to support a finding of trademark infringement. (Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment at 30.) All but one of the affiants viewed Defendants' movie from a copy that was supplied to them by Plaintiffs. (*See* Davis Dep. at 67.) According to his deposition testimony, Davis cannot identify a person who watched Defendants' movie and thought that either Davis or Earth Protectors was being depicted in the movie. (*See id.* at 80.)

### Discussion

### I. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *See Enter. Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir.1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *See Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir.1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Krenik*, 47 F.3d at 957.

### II. Trademark Infringement

■ To prevail on a claim of trademark infringement, Plaintiffs must establish: (1) ownership of a valid trademark; and (2) a likelihood of confusion between the registered mark and the alleged infringing use by the defendant. *See First Bank v. First Bank Sys., Inc.*, 84 F.3d 1040, 1044 (8th Cir.1996). As to the first prong, Plaintiffs have moved for summary judgment, requesting that the Court declare that Plaintiffs own the "Earth Protector" trademark. Defendants, on the other hand, contend that Plaintiffs' registration and use of the descriptive term "Earth Protector" is insufficient to confer trademark rights. Specifically, Defendants assert that Plaintiffs do not possess a registered trademark for the class of uses that Plaintiffs claim to be infringed and that Plaintiffs have not established common law trademark rights based on their minimal, sporadic use of the mark. Finally, Defendants assert that no likelihood of confusion exists.

### A. Registered Trademark

■ Defendants are correct in asserting that Plaintiffs do not have a registered

trademark as to the class of uses that Plaintiffs assert were infringed. The Lanham Act only gives a registered trademark owner exclusive rights to use the mark in commerce "on or in connection with the goods or services specified in the certificate." 15 U.S.C. § 1057(b). Plaintiffs registered the mark as to clothing (Class 25) and printed reports and pamphlets (Class 16). However, Plaintiffs acknowledge abandoning the 1993 application that would have covered television broadcasting and the like (Class 41). Plaintiffs never received a registration for that class of goods and services. Thus, insofar as Plaintiffs' Motion for Summary Judgment seeks a declaration from the Court that Plaintiffs own a registered "Earth Protector" trademark for television broadcasting, the class of goods or services at issue in this lawsuit, Plaintiffs' motion is denied.

### B. Common Law Trademark

■ Defendants further assert that Plaintiffs have no common law trademark rights as to television movies. "[A] common-law trademark arises from the adoption and actual use of a word, phrase, logo, or other device to identify goods or services with a particular party." *See First Bank v. First Bank Sys., Inc.*, 84 F.3d 1040, 1044 (1996) (citing *Co-Rect Prods., Inc. v. Marvy! Advertising Photography, Inc.*, 780 F.2d 1324, 1329 (8th Cir.1985)). In order to prevail, the proponent of the trademark must demonstrate that the usage of the mark was " 'deliberate and continuous, not sporadic, casual or transitory.' " *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1054–55 (6th Cir.1999) (quoting *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1272 (2d Cir.1974)). A descriptive mark, as is at issue here, is the "weakest protectable mark and requires proof that the mark has acquired secondary meaning." *First Bank*, 84 F.3d at 1045

(citing *Cellular Sales, Inc. v. Mackay*, 942 F.2d 483, 485 (8th Cir.1991)). "The primary inquiry in determining whether the mark has attained secondary meaning is whether the mark has become associated with a particular source in the consumer's mind." *Id.* at 1045 (citing *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 871 (8th Cir.1994)).

■ Viewing the evidence in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have not demonstrated the prevalent and continuous use of Plaintiffs' mark in television broadcasting required to establish a common-law trademark. Davis has attested to using the "Earth Protector" mark only sporadically on local cable television broadcasts during the ten- to fifteen-year period that preceded this lawsuit. Indeed, most of Plaintiffs' use occurred prior to 1992, several years before Defendants' movie was aired. This minimal, sporadic evidence of Plaintiffs' use in television broadcasts, as a matter of law, is not sufficient to establish that the mark "conjures up a particular service or product in the minds of customers." *First Bank*, 84 F.3d at 1045 (quoting *First Fed. Sav. & Loan Ass'n of Council Bluffs v. First Fed. Sav. & Loan Ass'n of Lincoln*, 929 F.2d 382, 384 (8th Cir.1991)). Because Plaintiffs have not demonstrated that their use of "Earth Protectors" has acquired a secondary meaning with consumers of television movies, no common law trademark rights exist.

### C. Likelihood of Confusion

■ Finally, Defendants assert that even if Plaintiffs had established the existence of a valid registered or common law trademark as to television movies, Plaintiffs have not demonstrated that a likelihood of confusion exists. The central issue in an action for trademark in-

fringement or false designation of origin under the Lanham Act is whether the unauthorized use of the mark is "likely to cause confusion." 15 U.S.C. § 1114(1); 15 U.S.C. § 1125(a)(1)(A). Likelihood of confusion exists when the defendant's use of a mark is likely to confuse, deceive or cause mistake among an appreciable number of ordinary buyers as to the source of or association between the parties' products or services. *See Duluth News–Tribune v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1096 (8th Cir.1996). When evaluating likelihood of confusion, a court must consider: (1) the strength of the trademarks; (2) the similarity between the plaintiff's and defendant's marks; (3) the competitive proximities of the parties' products; (4) the alleged infringer's intent to confuse the public; (5) the evidence of actual confusion; and (6) the degree of care reasonably expected of potential customers. *See SquirtCo. v. Seven–Up Co.*, 628 F.2d 1086, 1091 (8th Cir.1980). None of these factors is dispositive, but the factors must be used "as a guide to determine whether a reasonable jury could find a likelihood of confusion." *Duluth News–Tribune*, 84 F.3d at 1096.

### 1. Strength of the Mark

 Plaintiffs contend that the "Earth Protectors" mark is distinctive, that it has gained secondary meaning in the market, and thus that it is entitled to protection. Defendants, on the other hand, assert that as a descriptive mark, Plaintiffs' mark is entitled to the weakest protection. The Court agrees with the Plaintiff that it has a protectable interest in "Earth Protector." The Court also agrees with Defendant that Plaintiffs' use of the mark has not garnered much public attention, and that as a descriptive mark, it is afforded the weakest form of protection. Accord-

ingly, the Court finds that this factor weighs in favor of neither party.

### 2. Similarity of the Marks

Based on the fact that the parties use the identical words, "Earth Protectors," the Court finds that this factor weighs in favor of Plaintiffs.

### 3. Competitive Proximity

Plaintiffs specifically seek a declaration from this Court that a competitive proximity exists between the products and services of Plaintiffs and those of Defendants. Defendants assert that no competitive proximity exists because Defendants' children's television movies do not compete with environmental pamphlets, t-shirts, or the sporadic use of the term "Earth Protectors" on public access cable television.

The trademarked uses of Plaintiffs' mark include apparel and pamphlets, which are not in competitive proximity with Defendants' use. Indeed, while the Court recognizes that Plaintiffs broadcast "Earth Protectors" on television, Plaintiffs' uses for these purposes have been limited to a handful of public access cable television broadcasts, while Defendants' movie was meant to serve as children's entertainment. Thus, the Court finds that no competitive proximity exists and this factor weighs in favor of Defendants.

### 4. Intent to Confuse the Public

Plaintiffs have submitted no evidence that Defendants intended to confuse the public by using the "Earth Protectors" mark. Thus, this factor weighs in favor of Defendants.

### 5. Actual Confusion

Plaintiffs contend that the affidavits they submitted on this issue support a finding that actual confusion arose due to Defendants' use of "Earth Protector" in

the Defendants' movie. Defendants, on the other hand, assert that Plaintiffs have only produced affidavits on this issue from their allies, not from ordinary viewers of children's television movies, that Plaintiffs attempted to generate confusion among their affiants, and that Plaintiffs' affiants do not describe any "actual confusion."

The Court finds that Plaintiffs have provided insufficient evidence from which a reasonable jury could conclude that actual confusion exists. First, the Court does not accept Plaintiffs' assertions that a small group of Davis's friends, allies, and supporters constitutes a valid survey group from which to determine whether actual confusion exists. Only two of Plaintiffs' affiants, David Cera and Richard Marx, appear to have seen the movie on the Disney Channel. Plaintiffs provided the remaining affiants with copies of "Up, Up, and Away" to view for the purpose of creating an affidavit for this litigation. In addition, almost all of the affiants are allies and supporters of Davis and have known Davis and his organization for several years. Considering the nature of affiants' relationship with Davis and the "Earth Protector" organization, the Court agrees with Defendants that Plaintiffs' affiants are biased in favor of Plaintiffs and not representative of ordinary viewers of children's television movies.

In addition, the Court finds that the affidavits themselves do not support a finding of actual confusion. Many of the affiants signed identical affidavits, attesting to word-for-word reactions to Defendants' movie upon viewing it. The affidavits express the affiants' concerns that Defendants had misappropriated the "Earth Protector" mark and the affiants' concerns that other individuals might confuse Defendants' "Earth Protectors" with Plaintiffs' organization. However, it is clear to the Court that Plaintiffs' affiants recognized the distinction between the "Earth Protectors" of Defendants' movie and Plaintiffs' organization. While they may have been concerned that outside individuals might be confused, these affiants had a clear understanding of Davis's noble pursuits and were not confused themselves. With these considerations in mind, the Court finds that this factor weighs in favor of Defendants.

### 6. Degree of Care Expected of Customers

Considering the Court's finding that the marks are similar and that the typical audience member is a child or parent television viewer, it is unlikely that a typical consumer could avoid confusion through the exercise of due care. This factor weighs in favor of Plaintiffs.

After reviewing the evidence presented and the relevant factors, the Court finds that even if Plaintiffs had a valid registered or common law trademark as to television movies, no likelihood of confusion exists as a matter of law. Although the marks may be similar, the marks are not in competitive proximity with each other and Plaintiffs have failed to provide sufficient evidence of actual confusion. Thus, Defendants' Motion for Summary Judgment on this issue is appropriately granted and Plaintiffs claims of trademark infringement are dismissed.

### III. Copyright Infringement

Defendants have moved for summary judgment on Plaintiffs' claim of copyright infringement. Specifically, Defendants assert that the only similarities between Plaintiffs' copyrighted drawing and the accused work are in stock elements that existed long prior to Plaintiffs' drawings, and therefore, cannot be protected by copyright. The Court agrees.

As a matter of law, the term "Earth Protector" that appears in Plaintiffs' copyrighted drawing is not protectable by copyright (*see* 37 C.F.R. § 202.1 (listing "[w]ords and short phrases such as names, titles, and slogans" as examples of material not subject to copyright)). In evaluating whether the remaining elements of the copyrighted drawing have been infringed, the Court must look first to whether a substantial similarity exists in the objective details of the two works. *See Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir.1987). The Court must "filter out and disregard the non-protectable elements in making its substantial similarity determination." *Hoch v. MasterCard Int'l, Inc.*, 284 F.Supp.2d 1217, 1222 (D.Minn.2003) (quoting *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir.2002)). Without even needing to reach the issue of the admissibility of the testimony of Defendants' purported superhero expert, Zander Cannon, the Court agrees with Defendants that the only similar elements between the Plaintiffs' drawing and the superheroes in Defendants' movie are stock elements of the superhero genre. These elements include superhero capes, leotards, masks, chest emblems, boots, belts, and flared gloves. These elements all pre-date Plaintiffs' copyright.

Having found no substantial similarity between Plaintiffs' drawing and the accused work, aside from a similarity in unprotectable elements, the Court finds that as a matter of law, no copyright infringement exists.

### CONCLUSION

Accordingly, based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

1. Plaintiffs' Motion for Summary Judgment (Doc. No. 51) is **DENIED**;

2. Defendants' Motion for Summary Judgment (Doc. No. 67) is **GRANTED**; and

3. The remaining Counts of Plaintiffs' Complaint are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**