# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3586

_____

| | | |
|---|---|---|
| Hubbard Feeds, Inc., | * | |
| a Minnesota corporation, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Animal Feed Supplement, Inc., | * | District of Minnesota. |
| d/b/a New Generation Feeds, Inc.; | * | |
| Denis J. Daly; Jeff Westberg; Larry | * | |
| Russell Smith; Keith Hollingsworth, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: May 11, 1999
Filed: July 7, 1999

_____

Before RICHARD S. ARNOLD, JOHN R. GIBSON, and BOWMAN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Hubbard Feeds, Inc. (Hubbard) commenced this lawsuit against Animal Feed Supplement, Inc. (AFS) in Minnesota state court, alleging that AFS had engaged in trademark and trade dress infringement, unfair competition, deceptive trade practices, and various other Lanham Act and state law violations. To remedy the alleged trademark and trade dress infringement, Hubbard requested a preliminary injunction prohibiting AFS from using Hubbard's registered half-barrel container. AFS removed

the case to federal court, where the District Court[1] denied Hubbard's motion for a preliminary injunction. Hubbard appeals. We have jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(1).

Hubbard produces an animal block-feed product that sells throughout the United States and Canada under the name "Crystalyx." Hubbard packages Crystalyx in a half-barrel container configuration in which it owns an incontestable trademark.[2] AFS produces a competing block-feed product called "Smartlic," which also is packaged in a half-barrel container and is sold primarily in a seven-state region of the midwestern and southwestern United States. AFS has packaged its product in the half-barrel container since 1977 and recently made a substantial investment in equipment for producing the half-barrel.

Hubbard became aware of AFS's allegedly infringing use of the half-barrel container in 1988, but did not object until October 14, 1997, when Hubbard sent a cease and desist letter to AFS. AFS failed to heed Hubbard's request, and Hubbard brought this action on October 31, 1997. Hubbard alleged, inter alia, that AFS's continued use of the half-barrel amounts to trademark and trade dress infringement, and

---

[1]The Honorable Michael J. Davis, United States District Court Judge for the District of Minnesota.

[2]That a registered trademark has achieved incontestable status is conclusive evidence of the mark's registration and validity, and of the registrant's ownership and exclusive right to use the mark, subject to certain enumerated defenses not implicated in this case. See 15 U.S.C. § 1115(b) (1994); Dakota Indus. v. Ever Best Ltd., 28 F.3d 910, 912-13 (8th Cir. 1994). Though critical minds might question the extension of trademark protection to an apparently unremarkable steel half-barrel, Hubbard explains that its mark was registered in recognition of the half-barrel's "secondary meaning," that is, its association with Hubbard's product. See, e.g., First Bank v. First Bank Sys., Inc., 84 F.3d 1040, 1045 (8th Cir. 1996) (defining secondary meaning as the association in consumers' minds of a mark with a particular source).

requested a preliminary injunction prohibiting AFS's use of the container. The District Court denied the preliminary injunction based on its determination that the equitable defense of laches applies, making it unlikely, in the District Court's view, that Hubbard could succeed on the merits of the case. It is from this interlocutory ruling that Hubbard appeals.

We review the denial of a motion requesting a preliminary injunction under the abuse-of-discretion standard. See Kirkeby v. Furness, 52 F.3d 772, 774 (8th Cir. 1995). An abuse of discretion has occurred when an injunction has been denied "on the basis of any clearly erroneous findings of fact or any clear error on an issue of law that may have affected the ultimate balancing of the factors considered for a preliminary injunction." National Credit Union Admin. Bd. v. Johnson, 133 F.3d 1097, 1101 (8th Cir. 1998) (internal quotation and alteration omitted). The factors considered for a preliminary injunction are: (1) the probability that the moving party will succeed on the merits; (2) the threat of irreparable harm to the moving party; (3) the balance of hardships; and (4) the public interest. See United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1178-79 (8th Cir. 1998); DataPhase Sys. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc). When applying the DataPhase factors, as they have come to be called, "'a court should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene.'" Clorox, 140 F.3d at 1179 (quoting DataPhase, 640 F.2d at 113).

To succeed on the merits of its trademark and trade dress[3] infringement claims, Hubbard will have to demonstrate at trial that the half-barrel container is entitled to protection and that AFS's use of the container is likely to confuse consumers as to the

---

[3]Trade dress is defined as "the 'total image of a product, the overall impression created, not the individual features.'" Children's Factory, Inc. v. Benee's Toys, Inc., 160 F.3d 489, 493-94 (8th Cir. 1998) (quoting Insty*Bit, Inc. v. Poly-Tech Indus., 95 F.3d 663, 667 (8th Cir. 1996), cert. denied, 519 U.S. 1151 (1997)).

source of AFS's product.[4]  See 15 U.S.C. § 1114(1)(a) (1994); see also  Insty*Bit, Inc. v. Poly-Tech Indus., 95 F.3d 663, 667 (8th Cir. 1996), cert. denied, 519 U.S. 1151 (1997); Dakota Indus. v. Ever Best Ltd., 944 F.2d 438, 440 (8th Cir. 1991).  Hubbard asserts the incontestability of its trademark as conclusive proof that the mark is valid and that the container thus is entitled to protection.  The District Court determined, however, that Hubbard's laches in asserting its trademark against AFS stands in the way of a preliminary injunction.

The equitable defense of laches is applicable to an action to enforce an incontestable trademark and, therefore, should be considered in evaluating the likelihood of success on the merits of a trademark infringement claim.  See United States Jaycees v. Cedar Rapids Jaycees, 794 F.2d 379, 382-83 (8th Cir. 1986); Pyrodyne Corp. v. Pyrotronics Corp., 847 F.2d 1398, 1402-03 (9th Cir.) (relying on Jaycees), cert. denied, 488 U.S. 968 (1988).  Laches applies when a claimant inexcusably delays in asserting its claim and thereby unduly prejudices the party against whom the claim ultimately is asserted.  See, e.g., Elvis Presley Enters. v. Capece, 141 F.3d 188, 205 (5th Cir. 1998).

Hubbard was aware of any infringing conduct by AFS in 1988 and failed to object to AFS's use of the half-barrel container until October 1997, thus delaying nine years in asserting its rights.  Hubbard does not posit any plausible excuse for its delay.[5]

_____

[4]Although Hubbard's complaint to the District Court charged nine counts of various kinds of tortious conduct, Hubbard argued, and continues to argue, the merits of only its trademark and trade dress infringement claims in support of a preliminary injunction.  We therefore consider Hubbard's likelihood of success on the merits of only the trademark and trade dress claims.

[5]Hubbard asserts that AFS was a licensee with permission to use the half-barrel container until at least May 31, 1993, and that the period of non-infringing use should not contribute to the calculation of Hubbard's delay.  Even if Hubbard is correct in its assertion that the relevant time period should begin to run from May 1993, a delay of

Relying on its apparent authorization to use the half-barrel, AFS made a substantial investment in equipment for use in producing the half-barrel and has $250,000 worth of block-feed inventory already packaged in half-barrel containers. Cf. Landers, Frary & Clark v. Universal Cooler Corp., 85 F.2d 46, 49 (2d Cir. 1936) (Hand, J.) ("[T]he defendant spent large sums in reliance upon its apparent immunity . . . . Moreover, the estoppel need not depend upon expenditure alone. When for eight years one plans one's business on the assumption that one may use a mark, it is a grave dislocation of the business to stop its use . . . ."); Hilton Int'l Co. v. Hilton Hotels Corp., 888 F. Supp. 520, 535 (S.D.N.Y. 1995) (quoting Landers). Thus, for all that presently appears, laches applies and equity dictates that Hubbard may not enforce its mark, incontestable though it may be, against AFS.

Furthermore, laches aside, the District Court did not abuse its discretion in concluding that Hubbard did not establish a likelihood of consumer confusion from AFS's continued use of the half-barrel container. The ultimate inquiry always is whether, considering all the circumstances, a likelihood exists that consumers will be confused about the source of the allegedly infringing product. See Children's Factory, Inc. v. Benee's Toys, Inc., 160 F.3d 489, 496 (8th Cir. 1998); ConAgra, Inc. v. George A. Hormel, & Co., 990 F.2d 368, 369 (8th Cir. 1993); Mutual of Omaha Ins. Co. v. Novak, 836 F.2d 397, 399 nn.3, 4 (8th Cir. 1987), cert. denied, 488 U.S. 933 (1988). Factors relevant to this inquiry include: (1) the strength of the owner's mark; (2) the similarity of the owner's mark to the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to "pass off" its goods as those of the trademark owner; (5) incidents of actual confusion; and (6) whether the degree of care exercised by the consumer can eliminate a likelihood of

over four years is sufficient for laches. See, e.g., Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 192-93 (2d Cir. 1996) (five-year delay); Tough Traveler, Ltd. v. Outbound Prods., 60 F.3d 964, 968 (2d Cir. 1995) (one-year delay); MCV, Inc. v. King-Seeley Thermos Co., 870 F.2d 1568, 1571-72 (Fed. Cir. 1989) (four-year delay).

confusion that otherwise would exist.  See Minnesota Mining & Mfg. Co. v. Rauh Rubber, Inc., 130 F.3d 1305, 1308 (8th Cir. 1997); SquirtCo v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir. 1980).

Hubbard argues that its mark is strong based on its incontestable status alone, that the half-barrel container configurations used by Hubbard and AFS are identical, and that the products packaged by Hubbard and AFS in the half-barrel container directly compete with one another.  Hubbard concedes, however, that it did not present evidence that consumers actually are confused by AFS's use of the half-barrel. Although evidence of actual confusion is not necessary for a finding that a likelihood of confusion exists, it is perhaps the most effective way to prove a likelihood of confusion.  See Stuart Hall Co. v. Ampad Corp., 51 F.3d 780, 790-91 (8th Cir. 1995); Woodsmith Pub. Co. v. Meredith Corp., 904 F.2d 1244, 1249 (8th Cir. 1990); SquirtCo, 628 F.2d at 1091.  Considering that AFS has persisted in using the half-barrel container for over two decades, and has done so with Hubbard's knowledge since 1988, Hubbard's failure to present evidence of consumer confusion owing to AFS's allegedly infringing conduct is telling.  Furthermore, that AFS affixes a large Smartlic label to its half-barrel and paints the half-barrel a light tan color, while Hubbard's half-barrel is black and unlabeled, repudiates the contention that AFS intends to pass its Smartlic product off as Hubbard's Crystalyx.  In these circumstances, the District Court did not abuse its discretion in determining that the likelihood-of-confusion facet of the case, which is central to success on the merits, see Minnesota Mining, 130 F.3d at 1308 ("[C]onsumer confusion . . . is the hallmark of any trademark infringement claim." (internal quotation omitted)), does not sustain Hubbard's motion for a preliminary injunction.

In support of the second DataPhase factor, irreparable harm in the absence of a preliminary injunction, Hubbard repeats its assertion of consumer confusion resulting from AFS's use of the half-barrel container.  As we already have concluded, Hubbard's evidence fails to show any likelihood of consumer confusion.  Moreover, as the District

Court determined, Hubbard's delay in objecting to AFS's use of the half-barrel belies any claim of irreparable injury pending trial. See Tough Traveler, Ltd. v. Outbound Prods., 60 F.3d 964, 968 (2d Cir. 1995) (stating that delay in moving for preliminary injunctive relief negates any presumption of irreparable harm based on consumer confusion and may, standing alone, justify denial of preliminary injunctive relief).

Finally, Hubbard's remaining arguments regarding the third and fourth Dataphase factors, the balance of hardships and the public interest, are unconvincing and cannot overcome Hubbard's failure to show a probability of success on the merits and a threat of irreparable injury. See Baker Elec. Coop., Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994) ("No single factor in itself is dispositive[,] . . . . [h]owever, a party moving for a preliminary injunction is required to show the threat of irreparable harm." (internal quotation and citation omitted)); Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 871 F.2d 734, 738 (8th Cir. 1989) (en banc) (same).

We hold the District Court did not abuse its discretion in denying Hubbard's motion for a preliminary injunction. Of course, neither the District Court's denial of the motion nor our affirmation of the District Court's judgment will bind the District Court or the parties in any further proceedings in this case, for adjudication of a motion for a preliminary injunction is not a decision on the merits of the underlying case. See Campbell "66" Express, Inc. v. Rundel, 597 F.2d 125, 130 (8th Cir. 1979) (per curiam) (quoting Benson Hotel Corp. v. Woods, 168 F.2d 694, 697 (8th Cir. 1948)); see also Coteau Properties Co. v. Department of Interior, 53 F.3d 1466, 1482 n.2 (8th Cir. 1995) (Heaney, J., dissenting).

The judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.