# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1005

_____

JELD-WEN, INC.,                     *
                                    *
         Appellant,                 *
                                    *
    v.                              *   Appeal from the
                                    *   United States District Court
DALCO INDUSTRIES, INC.,             *    For the Eastern District
                                    *    of Missouri
         Appellee.                  *

                          [UNPUBLISHED]

_____

Submitted: June 15, 1999
Filed: November 10, 1999

_____

Before BEAM and MORRIS SHEPPARD ARNOLD, Circuit
    Judges, and PANNER[1], District Judge

_____


PER CURIAM

_____

[1]The Honorable Owen M. Panner, United States District Judge for the District
of Oregon, sitting by designation.

Plaintiff Jeld-Wen, Inc. appeals from the district court's[2] grant of judgment as a matter of law on claims for trademark infringement, unfair competition, and trademark dilution. Plaintiff contends that defendant Dalco Industries, Inc., which uses the mark "Elite 4000" for custom vinyl windows, is infringing on plaintiff's "Elite" mark for wood doors.

We affirm.

## BACKGROUND

Plaintiff, an Oregon corporation, is one of the world's largest manufacturers of wood doors. In 1975, plaintiff began making and selling wood molded interior doors with the "Elite" mark. In 1983, plaintiff had the mark federally registered for wood interior and exterior doors, and for "door skins" made of fiberboard. Plaintiff now uses the Elite mark on wood exterior doors, door entry systems, and wood garage doors. Elite doors may be installed with glass inserts or adjacent glass side-lights, but plaintiff does not sell windows under the Elite mark.

Plaintiff has sold more than 100 million Elite doors. In 1997, plaintiff sold 5.65 million Elite products, which generated $125 million in revenues, including $20 million in the South and Midwest where defendant sells its products. Plaintiff sells Elite doors wholesale to distributors only, not directly to consumers.

---

[2]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

Over the last ten years, plaintiff has spent more than $500,000 a year advertising Elite doors. Plaintiff advertises "to the trade" in magazines aimed at architects, professional contractors, and retailers. Plaintiff also advertises in point of purchase displays and brochures in retail stores.

Defendant is a Missouri corporation founded in 1973. Since 1988, defendant has made and sold custom vinyl windows and rolling vinyl patio doors under the mark "Elite 4000." Defendant makes vinyl windows only to order, selling to remodelers or directly to consumers. The windows are available in finishes that look like wood.

Defendant advertises through television, radio, and brochures. It uses the mark "Elite 4000," occasionally without the "4000."

At a trade show in 1996, plaintiff's sales manager noticed defendant's booth promoting the Elite 4000 line. When plaintiff later requested that defendant stop using the Elite 4000 mark, defendant agreed as to patio doors but not windows. The parties dispute whether defendant continues to market patio doors under the Elite 4000 mark.

The case went to a jury trial in November 1998. At the close of plaintiff's evidence, the district court granted defendant's motion for judgment as a matter of law.

## STANDARDS

"We review the grant of a judgment as a matter of law de novo, applying the same standards used by the district court." Miller v. City of Springfield, 146 F.3d 612, 614 (8th

3

Cir. 1998). "Judgment as a matter of law is proper when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" Id. (quoting Fed. R. Civ. P. 50(a)(1)).

DISCUSSION

I. Trademark Infringement and Unfair Competition Claims

To establish its claims for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), plaintiff must prove that (1) it owns a distinctive trademark that is entitled to protection; and (2) defendant's use of a similar mark was likely to confuse consumers about the source of defendant's product. Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., 182 F.3d 598, 601 (8th Cir. 1999).

A. Distinctive and Protectible Mark

1. "Elite" Is Not Incontestable As To Windows

Plaintiff claims that its "Elite" mark is incontestable because more than five years have elapsed since its federal registration. See 15 U.S.C. § 1065. An incontestable mark "cannot be challenged . . . for mere descriptiveness, or on the basis that the mark lacks secondary meaning." Sunrise Jewelry Mfg. Corp. v. Fred S.A., 175 F.3d 1322, 1324 (Fed. Cir. 1999); Park 'N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 205 (1985) (alleged infringer may not argue that incontestable mark is descriptive).

4

We agree with the district court that plaintiff's mark is incontestable only as to doors, the products for which plaintiff received the trademark registration.  The statute provides that registration "shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the mark in commerce <u>on or in connection with the goods or services specified in the certificate</u>."  15 U.S.C. § 1057(b) (emphasis added); <u>Mushroom Makers, Inc. v. R.G. Barry Corp.</u>, 580 F.2d 44, 48 (2d Cir. 1978) ("even if a mark is registered, the presumption of an exclusive right to use it extends only so far as the goods or services noted in the registration certificate").  An incontestable mark does not allow "a registrant to claim rights over a greater range of products than he would otherwise be entitled to claim."  <u>Union Carbide Corp. v. Ever-Ready Inc.</u>, 531 F.2d 366, 377 (7th Cir. 1976); <u>Sunmark, Inc. v. Ocean Spray Cranberries, Inc.</u>, 64 F.3d 1055, 1058 (7th Cir. 1995) ("[T]hat <u>Swee</u>TARTS is an incontestible mark for sugar candy does not make [plaintiff] the gatekeeper of these words for the whole food industry.").  Because plaintiff's Elite mark is not incontestable as to windows, defendant may challenge the mark as descriptive and lacking secondary meaning.

### 2.  "Elite" Is Descriptive

This court divides trademarks into four categories: "(1) generic; (2) descriptive; (3) suggestive; (4) arbitrary or fanciful."  <u>Stuart Hall Co. v. Ampad Corp.</u>, 51 F.3d 780, 785

5

(8th Cir. 1995) (citing Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir. 1976)). Plaintiff contends that its mark is suggestive, while defendant contends that the mark is descriptive. The distinction is crucial because a suggestive mark is entitled to protection without proof that it has achieved secondary meaning. First Bank v. First Bank System, Inc., 84 F.3d 1040, 1045 n.5 (8th Cir. 1996).

A suggestive mark requires that the customer use some imagination or thought to see the connection between the mark and the product. See Duluth News-Tribune v. Mesabi Publishing Co., 84 F.3d 1093, 1096 (8th Cir. 1996). A descriptive mark "describes the product's features, qualities, or ingredients in ordinary language or describes the use to which the product is put." Lane Capital Management, Inc. v. Lane Capital Management, Inc., No. 98-9173, 1999 WL 734924, at *4 (2d Cir. Sept. 22, 1999).

Our dictionary defines "elite," when used as an adjective, to be synonymous with "choice, superior, select." Webster's Third International Dictionary 736 (1976) (citing "an [elite] brand of coffee" as example of usage). Although plaintiff contends, based on another dictionary[3], that "elite" may refer only to persons, we conclude that the word may be used to describe objects as well.

Because the word "elite" indicates superior quality, as used here it is a "self-laudatory" mark. See 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair

---

[3]We mean no criticism of the Merriam Webster's Collegiate Dictionary (10th ed. 1997), which both parties have cited.

Competition § 11:17 (4th ed. updated Sept. 1999) (McCarthy). Courts have held that self-laudatory marks such as BEST, SUPERIOR, and PREFERRED are descriptive, not suggestive. First Sav. Bank, F.S.B. v. First Bank System, Inc., 101 F.3d 645, 654 (10th Cir. 1996); Platinum Home Mortgage Corp. v. Platinum Fin. Group, Inc., 149 F.3d 722, 728 (7th Cir. 1998) (affirming preliminary ruling that "platinum" is a descriptive, self-laudatory mark); McCarthy, § 11:17, at 11-22 to 11-22.1 (marks such as SPEEDY, FRIENDLY, DEPENDABLE, PREFERRED, DELUXE, GOLD MEDAL, BLUE RIBBON, and SUPER BUY are descriptive). Because "elite" is descriptive, plaintiff must show that the mark has acquired secondary meaning to obtain protection.

3. Secondary Meaning

A descriptive mark may acquire secondary meaning if it becomes so associated with the product that it identifies the source of the product and distinguishes the product from those of others. First Bank v. First Bank System, Inc., 84 F.3d 1040, 1045 (8th Cir. 1996). "The primary inquiry in determining whether the mark has attained secondary meaning is whether the mark has become associated with a particular source in the consumer's mind." Id.

Here, plaintiff needed to establish that those who purchase vinyl replacement windows would tend to associate the mark "Elite" with plaintiff. We agree with the

7

district court that plaintiff failed to present sufficient evidence to establish that "Elite" achieved secondary meaning in the market for replacement vinyl windows.

Plaintiff presented no customer surveys or any other evidence from third-party witnesses that customers seeking vinyl windows associated plaintiff with the Elite mark. Plaintiff did spend large sums advertising the Elite line of doors, but it is the advertising's effect, not its extent, that is crucial. Id. at 1045-46; Platinum Home Mortgage, 149 F.3d at 729 (evidence of advertising and sales is "entirely circumstantial" in proving secondary meaning). That plaintiff sells windows under different marks is not relevant. As to vinyl replacement windows, Elite is a weak, descriptive mark that has not acquired secondary meaning.

B. Likelihood of Confusion

Even if plaintiff's mark could be considered protectible as suggestive or as having acquired a secondary meaning, we agree with the district court that plaintiff failed as a matter of law to establish a likelihood of confusion.

In determining whether there was a likelihood of confusion between plaintiff's and defendant's products, the court should consider six factors, none of which is dispositive: (1) the strength of the owner's mark; (2) the similarity between the owner's mark and the alleged infringer's mark; (3) the degree to which the products compete with one another; (4) the alleged infringer's intent to "pass off" its product as those of the mark's owner; (5)

8

incidents of actual confusion; and (6) the type of product, its costs, and conditions of purchase. Luigino's, Inc. v. Stouffer Corp., 170 F.3d 827, 830 (8th Cir. 1999). "The ultimate inquiry always is whether, considering all the circumstances, a likelihood exists that consumers will be confused about the source of the allegedly infringing product." Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., 182 F.3d 598, 602 (8th Cir. 1999). To prevail on this issue, a plaintiff must show a probability of confusion, not merely a possibility. Pebble Beach Co. v. Tour 18 I Limited, 155 F.3d 526, 543 (5th Cir. 1998).

1. Strength of Owner's Mark

However strong plaintiff's Elite mark may be as to doors, plaintiff has not shown that the mark's strength carries over to vinyl replacement windows. "[A] mark which is strong in its field is not as susceptible to confusion with an identical mark used in connection with a dissimilar, albeit somewhat related, field." IDV North America, Inc. v. S & M Brands, Inc., 26 F. Supp. 2d 815, 824 (E.D. Va. 1998); Amstar Corp. v. Domino's Pizza, Inc., 615 F.2d 252, 260 (5th Cir. 1980) (DOMINO mark strong in sugar products but weak for other food products). Because it is descriptive, "Elite" is inherently weak. As noted, extensive advertising does not necessarily create a strong mark.

The word "elite" is commonly used alone or with other terms to describe many products and services. Evidence of third-party use of the same mark is another sign of a weak mark. See Petro Stopping Centers L.P. v. James River Petroleum, Inc., 130 F.3d

9

88, 93 (4th Cir. 1997), <u>cert. denied</u>, 118 S. Ct. 1561 (1998).  This factor favors defendant.

### 2.  Similarity Between Two Marks

The marks at issue here are similar, although not identical.  Defendant usually refers to "Elite 4000," rather than using Elite standing alone, and uses a stylized crown over the "I" in "Elite."  These difference are minor, however, so this factor favors plaintiff.

### 3.  Degree of Competition Between Products

Plaintiff argues that doors and windows are often sold by the same businesses in close proximity.  Plaintiff has not shown, however, that its doors compete with defendant's windows.  (Even assuming that defendant still sells rolling vinyl patio doors under the "Elite" mark, vinyl patio doors are quite different from the wooden doors made by plaintiff.)

### 4.  Intent to Pass-Off Product as Owner's

Defendant was aware of plaintiff's mark before it chose its mark.  Plaintiff has not presented any evidence, however, that defendant intended to pass off its windows as those of plaintiff.

### 5.  Incidents of Actual Confusion

Plaintiff cited no incidents of actual confusion.  Of plaintiff's 60,000 customers, there was very little overlap with defendant's customers.[4]  This factor weighs in

---

[4]Plaintiff complains that the district court did not give it enough time to compare the parties' customer lists.  Plaintiff has not, however, shown that further time would

defendant's favor, although it is not conclusive.  See SquirtCo v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir. 1980) (plaintiff need not prove actual confusion to establish a likelihood of confusion).

### 6.  Type of Product, Costs, and Conditions of Purchase

The customers for vinyl replacement windows are relatively sophisticated.  Such customers would be unlikely to purchase without some knowledge of a product's origin, especially when ordering custom-made windows for hundreds or thousands of dollars. This factor favors defendant.

Taking the evidence in light most favorable to plaintiff, we agree with the district court that plaintiff failed as a matter of law to establish an issue of fact regarding the likelihood of confusion.

## II.  Unfair Competition Claim

The parties agree that to establish an unfair competition claim under Missouri law, plaintiff must establish essentially the same elements needed to show a likelihood of confusion in an unfair competition claim under federal law.  The district court correctly ruled that plaintiff had failed to prove its state law unfair competition claim.

---

have revealed more common customers.

11

III.  Dilution Claim

The trial court determined that plaintiff could not prevail on its equitable claim of dilution under Missouri law.  "Dilution occurs when consumers associate a famous mark that has traditionally identified the mark holder's goods with a new and different source." Luigino's, 170 F.3d at 832.  "By causing consumers to connect the famous mark with different products, the subsequent mark weakens, or dilutes, the famous mark's unique and distinctive link to a particular product."  Id.

The parties disagree on the proper standard of review.  Assuming our review is de novo, we conclude that the district court's ruling was correct.  Plaintiff presented insufficient evidence that defendant's mark diluted plaintiff's mark.

AFFIRMED.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

12