# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2907

_____

| | | |
|---|---|---|
| Champagne Louis Roederer, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| | * | |
| J. Garcia Carrion, S.A.; | * | |
| Friend Wine Marketing, Inc., | * | |
| d/b/a  CIV USA, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted:  March 10, 2009
Filed:  June 24, 2009

_____

Before MURPHY, MELLOY, and SHEPHERD, Circuit Judges.

SHEPHERD, Circuit Judge.

Champagne Louis Roederer ("Roederer") appeals the district court's dismissal on summary judgment of its trademark infringement suit against J. Garcia Carrion, S.A. ("Carrion") and Friend Wine Marketing, Inc., d/b/a CIV USA ("CIV USA") on the ground that Roederer's suit was barred by the equitable doctrine of laches. We reverse and remand.

## I.

Roederer is a wine producer incorporated under the laws of France. Roederer produces, among other things, an expensive champagne that is sold under the name "Cristal." Created in 1876 as the official wine of the Imperial Court of Russia for Tsar Alexander II, Cristal has achieved significant notoriety, as the appellees put it, as the champagne of the "tsars and the stars." Roederer has registered the trademark "CRISTAL CHAMPAGNE" and the trademark and design "CRISTAL CHAMPAGNE LR" in the United States.

Carrion is a Spanish corporation owned by Priesca, another Spanish corporation. Jaume Serra is a Spanish winery also owned by Priesca. In August 1998, Jaume Serra and Carrion merged into a single entity operating under the Carrion name.

Jaume Serra began making cava, a type of sparkling wine distinct from champagne, in 1984. By 1987, Jaume Serra was selling cava under the names "Cristalino Jaume Serra" or "Cristalino." By 1989, Jaume Serra was selling Cristalino cava in the United States. Early sales were small, but by 1997 Cristalino sales had grown to nearly 400,000 bottles in the United States.

CIV USA is an importer. CIV USA began importing Jaume Serra wine into the United States in either 1991 or 1992. CIV USA currently imports, distributes, and markets Carrion products in the United States.

Roederer successfully objected to Jaume Serra's attempt to register the "CRISTALINO" mark in Spain in 1989. Roederer filed a similar objection to the registration of the "CRISTALINO JAUME SERRA" mark in Colombia in 1991, but abandoned the proceedings in 2000 for unexplained reasons. Similarly, Roederer at

first opposed Jaume Serra's application to register "CRISTALINO JAUME SERRA" in the United States, but abandoned that opposition in 1997.

Agents of Roederer first learned that Cristalino was being sold in the United States in 1995. During proceedings unrelated to the appellees before the United States Patent and Trademark Office ("PTO"), Roederer's attorneys came across an affidavit indicating that "a sparkling wine from Spain called Cristalino" had been found on sale at a Cost Plus store in California on June 8, 1995.

After the merger of Carrion and Jaume Serra, Carrion began modernizing and expanding its winery facilities because, as it acknowledges, Jaume Serra's facilities were antiquated at the time of the merger. Carrion spent 14 million euros from 1997 to 2002 improving Jaume Serra's cava production. These improvements were not directed solely at Cristalino cava, as Carrion produces three different brands of cava, plus several "private label" cavas for retailers. The renovations increased the total output of the Jaume Serra plant from 4 million bottles in 1997 to 15 million in 2003. Of the 15 million bottles produced in 2003 at the Jaume Serra plant, approximately 1.3 million of the bottles were Cristalino, or about 9%.

In February 2002, Carrion's United States intent-to-use trademark application to register the "CRISTALINO" mark was published for opposition. In June and July 2002, Roederer responded with cease-and-desist letters requesting that Carrion withdraw its application for the "CRISTALINO" mark. Carrion refused. After settlement talks failed, Roederer filed its notice of opposition with the Trademark Trial and Appeal Board ("Trademark Board"). Roederer filed the present lawsuit in January 2006, and Roederer's opposition before the Trademark Board was stayed pending this suit.

The district court dismissed on summary judgment Roederer's suit for trademark infringement on the ground that its claims were barred by the equitable

doctrine of laches. First, the court determined that both CIV USA and Carrion had standing to assert Jaume Serra's defenses. Second, it determined that Roederer was put on constructive notice that Cristalino was being sold in the United States in 1995 when its attorneys read in the affidavit that Cristalino was being sold at a chain of convenience stores in California. The court ruled that it would be inequitable to permit Roederer's request for injunctive relief to proceed because Carrion made substantial investments in the Jaume Serra facilities during the seven-year period between 1995 and 2002, when Roederer first objected to Carrion's use of the "CRISTALINO" mark in the United States.[1]

II.

Typically, "[w]e review *de novo* the district court's grant of summary judgment, applying the same standards as the district court." Schwan's IP, LLC v. Kraft Pizza Co., 460 F.3d 971, 973 (8th Cir. 2006). However, "[t]he determination of whether laches applies in the present case was a matter within the sound discretion of the district court, and we, accordingly, review the district court's application of laches for an abuse of discretion." Brown-Mitchell v. Kansas City Power & Light Co., 267 F.3d 825, 827 (8th Cir. 2001) (citation omitted). "Whether laches should be applied depends upon the facts of the particular case . . . ." Garrett v. Gen. Motors Corp., 844 F.2d 559, 562 (8th Cir. 1988).

Laches is an equitable defense to an action to enforce a trademark. Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., 182 F.3d 598, 601 (8th Cir. 1999).

---

[1]The district court also considered two additional issues: (1) whether the general rule that laches is inapplicable to suits seeking injunctive relief should apply here, and (2) whether the public's confusion about the two products was so inevitable that the public interest should override the court's conclusion that Roederer's suit should be dismissed. Given that the district court abused its discretion in granting the appellees' laches defense, we need not consider these additional issues.

"Laches applies when a claimant inexcusably delays in asserting its claim and thereby unduly prejudices the party against whom the claim ultimately is asserted." Id. at 602. "[A] defendant must demonstrate the presence of three elements in order to successfully assert laches as a defense: (1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted." Kason Indus., Inc. v. Component Hardware Group, Inc., 120 F.3d 1199, 1203 (11th Cir. 1997).

In addition, in trademark suits, courts consider two additional factors when evaluating the merits of a laches defense: (1) the doctrine of progressive encroachment, and (2) notice to the defendant of the plaintiff's objections to the potentially infringing mark. First, under the doctrine of progressive encroachment, the time of delay is to be measured not from when the plaintiff first learned of the potentially infringing mark, but from when such infringement became actionable and provable. See Angel Flight of Ga., Inc. v. Angel Flight Am., Inc., 522 F.3d 1200, 1207 (11th Cir. 2008) ("Under the doctrine of progressive encroachment, delay is to be measured from the time at which the plaintiff knows or should know she has a provable claim for infringement." (quotation omitted)); Kason Indus., 120 F.3d at 1206 ("[A] court should consider, in its assessment of laches, progressive encroachment, damage the plaintiff was suffering, and the likelihood of confusion at the time the plaintiff sued."); Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 462 (4th Cir. 1996) (laches defense is inapplicable where plaintiff chose to delay suit "until its right to protection had clearly ripened"); 6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 31.19 (4th ed. 2009) (owner of a mark "has no obligation to sue until the likelihood of confusion looms large" and "cannot be guilty of laches until his right ripens into one entitled to protection" (quotation omitted)). The doctrine of progressive encroachment makes sense. Otherwise, trademark holders would be hoisted upon the horns of an inequitable dilemma—sue immediately and lose because the alleged infringer is insufficiently competitive to

create a likelihood of confusion, or wait and be dismissed for unreasonable delay. See Sara Lee Corp., 81 F.3d at 462.

Second, courts tend to reject a defendant's assertion of the laches defense when the defendant knew that the plaintiff objected to the use of the mark. This rule can be understood either as an analogue to assumption of risk, or as a factor that prevents the defendant from suffering undue prejudice. See McCarthy, supra, § 31:12. In either event, forewarning of a plaintiff's objections generally prevents a defendant from making a laches defense. See Elvis Presley Enters., Inc. v. Capece, 141 F.3d 188, 205 (5th Cir. 1998) ("Any acts after receiving a cease and desist letter are at the defendant's own risk because it is on notice of the plaintiff's objection to such acts."); Conan Props., Inc. v. Conans Pizza, Inc., 752 F.2d 145, 151-52 (5th Cir. 1985) (stating that defendant opened business "at its own peril, without the defense of laches" after receiving plaintiff's cease and desist letter); Citibank v. Citibanc Group, Inc., 724 F.2d 1540, 1546-47 (11th Cir. 1984) (denying laches defense where plaintiff notified defendants of potential infringement before defendant acquired mark).

The district court found that Roederer inexcusably delayed in asserting its claim because it was on notice in 1995 when its attorneys learned of Carrion's use of the "CRISTALINO" mark in the United States.[2] The court noted that the progressive encroachment doctrine requires an additional finding of when the infringement became actionable to determine the period of delay, but it then failed to conduct a meaningful analysis of that issue. Without referencing the applicable law governing trademark infringement, it merely stated that "the evidence shows that sales of Cristalino have been greater than sales of Cristal since at least the mid-1990's" and that "evidence of significant changes in the quality of the cava is lacking." This was the extent of the district court's progressive encroachment analysis.

---

[2]Because we hold that notice of possible infringement alone is insufficient to measure the beginning of the period of delay, we do not decide whether the district court was correct to impute constructive notice to Roederer on these facts.

However, it does not follow from either of these factual determinations that Roederer had an actionable claim in 1995. "The Lanham Act prohibits the use of a mark in connection with goods or services in a manner that is likely to cause confusion as to the source or sponsorship of the goods or services." Davis v. Walt Disney Co., 430 F.3d 901, 903 (8th Cir. 2005) (citing 15 U.S.C. § 1125(a)(1)). We consider a number of factors when evaluating the likelihood of confusion:

> 1) the strength of the plaintiff's mark; 2) the similarity between the plaintiff's and defendant's marks; 3) the degree to which the allegedly infringing product competes with the plaintiff's goods; 4) the alleged infringer's intent to confuse the public; 5) the degree of care reasonably expected of potential customers, and 6) evidence of actual confusion.

Id. The fact that Cristalino's sales volume had edged past that of Cristal in 1995 is insufficient to demonstrate that Roederer had an actionable claim. Secondly, whether Carrion has subsequently improved its Cristalino product is irrelevant to the question of whether the qualities of Cristalino and Cristal were so disparate in 1995 as to preclude Roederer's infringement claim.[3] Although it would be unworkable to require a district court to locate the precise moment a trademark claim became actionable before proceeding with its laches analysis, more is required than merely citing marginal or irrelevant factors without reference to any of the principles governing trademark infringement.

---

[3]We also note that the 14 million euros Carrion spent improving the Jaume Serra plant, combined with other evidence that Carrion improved its cava products after its acquisition of Jaume Serra, created at the very least a genuine issue of material fact as to whether Roederer's claim was more actionable in 2002 than 1995. Although the defense of laches lies within the district court's discretion, this does not change the fact that summary judgment requires "evidence of the non-movant . . . to be believed, and all justifiable inferences . . . to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Furthermore, Carrion was (or should have been) on notice that Roederer objected to the use of the "CRISTALINO" mark. Roederer successfully opposed Jaume Serra's registration of the "CRISTALINO" mark in Spain in 1990. Roederer had also opposed the registration of the "CRISTALINO JAUME SERRA" mark in Columbia and the United States in 1991 and 1997, respectively. Although the district court permitted Carrion to stand in the shoes of Jaume Serra for purposes of asserting the laches defense, it ignored the fact that the same reasoning also requires that Carrion be deemed constructively aware of Roederer's opposition to the "CRISTALINO" mark before it merged with Jaume Serra in 1998. In his deposition testimony, Carrion's financial director, Felix Villaverde, testified that he knew of no attempt by Carrion to determine whether, at the time of acquisition, any of Jaume Serra's marks were subject to the superior rights of other companies. This failure does not change the fact that Roederer had made known its objections to the use of both the "CRISTALINO" and "CRISTALINO JAUME SERRA" marks. Even if Carrion could show that it expanded and improved the Jaume Serra facilities because of Roederer's delay in bringing suit in the United States, it cannot claim that it was ignorant of the fact that Roederer opposed the registration of the "CRISTALINO" and "CRISTALINO JAUME SERRA" marks. See Elvis Presley Enters., 141 F.3d at 205; Conan Props., 752 F.2d at 151-52; Citibank, 724 F.2d at 1546.

Finally, the district court also erred in finding that Carrion would be prejudiced by this delay if Roederer's suit were permitted to proceed. There is no evidence, other than the appellees' self-serving assertions, that Cristalino was so important to Carrion that it would have not made investments in the Jaume Serra plant had Roederer objected earlier. The district court placed a great deal of emphasis on the fact that Carrion had spent several years and several million euros improving Jaume Serra's facilities. However, the Jaume Serra facilities produced several brands—private labels, Jaume Serra, Heredad el Padruell, and Cristalino. The Cristalino brand accounted for approximately 9% of Jaume Serra's output after the improvements were completed in 2003. When a defendant has invested generally in an industry, and not

a particular product, the likelihood of prejudicial reliance decreases in proportion to the particular product's role in the business. See Univ. of Pittsburgh v. Champion Prods., Inc., 686 F.2d 1040, 1048-49 (3d. Cir. 1982) (laches defense held unavailable where the defendant's investment was in an entire industry, not the plaintiff's particular mark). Given this fact, Carrion has failed to show that it suffered undue prejudice as a result of Roederer's delay in bringing suit. This failure by itself is sufficient to bar the appellees' laches defense.

## III.

For the foregoing reasons, the district court abused its discretion in dismissing Roederer's suit. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

———————————