# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 21-1948

———————————————

A.I.G. Agency, Inc.

*Plaintiff - Appellant*

v.

American International Group, Inc., doing business as AIG

*Defendant - Appellee*

————————

Appeal from United States District Court
for the Eastern District of Missouri

————————

Submitted: January 13, 2022
Filed: May 13, 2022

————————

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.

————————

GRASZ, Circuit Judge.

A.I.G. Agency, Inc. ("Agency") sued American International Group, Inc. ("International") for trademark infringement over International's use of the "AIG" trademark. The district court granted summary judgment for International, holding Agency's claims were barred by the doctrine of laches. We reverse and remand to the district court for further proceedings.

# I. Background

This case is about two insurance-related companies that both claim the name "AIG." Agency is a family-owned insurance broker in Missouri. Agency allegedly began calling itself "AIG" around 1958. International is an insurance company incorporated in 1967. International first used the "AIG" mark sometime between 1968 and 1970. International obtained a federal trademark registration for "AIG" in 1981, which is still active.

In 1995, International sent a letter through its attorney to Agency notifying Agency of its trademark registration and demanding Agency stop using "AIG" because it was likely to confuse consumers. Agency's attorney sent a response letter claiming Agency had a right to use the name in Missouri and Illinois because it used the name in those states before International registered its trademark. Agency also indicated it was open to selling its rights to International.

In 2008, International's attorney sent another letter to Agency demanding it stop using "AIG." Agency responded with a phone call asserting its rights to use the name in Missouri and Illinois. International's attorney then sent Agency another letter saying it did not object to Agency's use of "AIG" in St. Charles and St. Louis counties in Missouri but threatened legal action if Agency expanded its use beyond those counties.

In 2009, International renamed its property and casualty business "Chartis." The rebranding did not stick, and in 2012, International returned to using "AIG" for its property and casualty business. Agency claims that also around 2012, International changed its marketing strategy and began aggressively selling to consumers through direct advertisements. Agency says that over the course of the next few years, it began experiencing significant incidences of consumers confusing Agency with International.

Agency sued International in 2017 over International's use of "AIG." Relevant to this appeal, Agency alleged common-law trademark infringement and unfair competition along with violation of the Lanham Act, 15 U.S.C. § 1125. International answered and asserted multiple affirmative defenses, including the doctrine of laches. International also

asserted counterclaims of trademark infringement, unfair competition, and trademark dilution under the Lanham Act.  International moved for summary judgment, and Agency moved for partial summary judgment.  International argued summary judgment was proper for multiple reasons, including because the doctrine of laches barred Agency's claims.  Agency argued that as a matter of law, International's use of "AIG" in Missouri and Illinois created a likelihood of confusion for consumers.

The district court agreed with International that Agency's claims were barred by the doctrine of laches, so it granted summary judgment in favor of International and dismissed Agency's claims.  Because none of Agency's claims survived, the district court denied Agency's motion for partial summary judgment as moot.  After the district court's ruling, International moved to voluntarily dismiss its counterclaims against Agency without prejudice, which the district court granted.

## II.  Analysis

On appeal, Agency argues the district court erred in granting summary judgment because it weighed disputed facts in International's favor.  So, Agency asks us to reverse the district court's grant of summary judgment to International and its denial of Agency's motion for partial summary judgment.  Agency also asks us to direct the district court to enter partial summary judgment for it on the issue of current likelihood of confusion.  Finally, Agency argues the district court should have dismissed International's counterclaims with prejudice for the reason that International's counterclaims are barred because International unduly delayed in bringing such claims and has acquiesced to Agency's use of "AIG."

### A.  Standard of Review

We typically review a grant of summary judgment de novo, *Roederer v. J. Garcia Carrion, S.A.*, 569 F.3d 855, 858 (8th Cir. 2009), affirming only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  But we review the district court's application of laches for abuse of

discretion. *Roederer*, 569 F.3d at 858. Harmonizing these two standards, we have said, "Although the defense of laches lies within the district court's discretion, this does not change the fact that summary judgment requires 'evidence of the non-movant . . . to be believed, and all justifiable inferences . . . to be drawn in [its] favor.'" *Id.* at 860 n.3 (alterations in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Thus, we use a two-pronged standard to review summary judgment based upon laches: (1) we determine whether there are any genuine disputes of material fact de novo, and (2) we review the district court's application of the laches defense to the facts for abuse of discretion. *See id.*; *accord Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 299 (4th Cir. 2012); *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 833–34 (9th Cir. 2002); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999).

## B. Laches Standard

Laches is an equitable affirmative defense which bars a trademark claim when the "claimant inexcusably delays in asserting its claim and thereby unduly prejudices the party against whom the claim is ultimately asserted." *Roederer*, 569 F.3d at 858–59 (quoting *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 602 (8th Cir. 1999)). A party raising a laches defense bears the burden of establishing: "(1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted." *Id.* (quoting *Kason Indus., Inc. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1203 (11th Cir. 1997)). In deciding whether there was inexcusable delay, one factor we consider is the doctrine of progressive encroachment. *Id.* at 859.

## C. Progressive Encroachment

"[U]nder the doctrine of progressive encroachment, the time of delay is to be measured not from when the [claimant] first learned of the potentially infringing mark, but

from when such infringement became actionable and provable." *Id.* Thus, "the progressive encroachment doctrine requires a[] . . . finding of when the infringement became actionable to determine the period of delay[.]" *Id.* at 859–60. Although a district court is not required "to locate the precise moment a trademark claim became actionable before proceeding with its laches analysis, more is required than merely citing marginal or irrelevant factors without reference to any of the principles governing trademark infringement." *Id.* at 860. The doctrine saves trademark holders from being "hoisted upon the horns of an inequitable dilemma—sue immediately and lose because the alleged infringer is insufficiently competitive to create a likelihood of confusion, or wait and be dismissed for unreasonable delay." *Id.* at 859.

Agency argues it did not have an actionable and provable infringement claim until late 2012, at the earliest, when International allegedly changed its marketing strategy. A trademark infringement claim becomes actionable and provable when the infringer's use of the mark becomes likely to confuse customers as to the source or sponsorship of the goods or services. *See Davis v. Walt Disney Co.*, 430 F.3d 901, 903 (8th Cir. 2005) (citing 15 U.S.C. § 1125(a)(1)); *see also Minn. Min. & Mfg. Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305, 1308 (8th Cir. 1997) ("Likelihood of consumer confusion . . . is the 'hallmark of any trademark infringement claim.'") (quoting *Polymer Tech. Corp. v. Mimran*, 37 F.3d 74, 80 (2d Cir. 1994)). Likelihood of confusion is an issue of fact and a "highly fact-intensive inquiry." *Select Comfort Corp. v. Baxter*, 996 F.3d 925, 934 (8th Cir. 2021), *cert. denied sub nom. Dires, LLC v. Select Comfort Corp.*, No. 21-212, 142 S. Ct. 561 (2021).

We consider six factors in evaluating likelihood of confusion:

> 1) the strength of the plaintiff's mark; 2) the similarity between the plaintiff's and defendant's marks; 3) the degree to which the allegedly infringing product competes with the plaintiff's goods; 4) the alleged infringer's intent to confuse the public; 5) the degree of care reasonably expected of potential customers[;] and 6) evidence of actual confusion.

*Roederer*, 569 F.3d at 860 *(quoting Davis*, 430 F.3d at 903). "[A]lthough no one factor is determinative, each must be analyzed." *Insty*Bit, Inc. v. Poly-Tech Indus., Inc.*, 95 F.3d

-5-

663, 670 (8th Cir. 1996). Because International bears the burden of showing inexcusable delay, it bears the burden of showing there was a likelihood of confusion, under the six-factor analysis, at some past time from which Agency inexcusably delayed in bringing its infringement claim. *See Roederer*, 569 F.3d at 858–59.

We hold the district court abused its discretion in finding International met this burden because it did not "conduct a meaningful analysis" of when International's alleged infringement became actionable. *Id.* at 860. Specifically, the district court failed to use the six-factor analysis for deciding the issue of progressive encroachment. The district court did not announce any test on which it relied for determining when a likelihood of confusion arose. It also did not meaningfully analyze the strength of International's mark at the relevant times, whether Agency intended to confuse the public, the degree of care expected of potential customers, or the evidence of actual confusion. *See Insty\*Bit*, 95 F.3d at 670 (holding each of the six factors must be analyzed for likelihood of confusion). Instead, it found Agency's claims barred by laches because "both parties have been using ['AIG'] in the same markets for decades, each with full knowledge of the other's activities, and [because] Plaintiff has been cognizant of the risk of consumer confusion since 1995[.]" These findings alone, however, do not necessarily establish Agency had an actionable and provable infringement claim in 1995. Instead, the *Roederer* six-factor analysis is the "the applicable law governing trademark infringement" the district court should have used. *Roederer,* 569 F.3d at 860. Thus, the district court abused its discretion. *See id.* at 860–61 (holding the district court abused its discretion in applying laches to a trademark claim because it failed to consider the appropriate principles governing progressive encroachment and trademark infringement); *see also Principal Sec., Inc. v. Agarwal*, 23 F.4th 1080, 1083 (8th Cir. 2022) ("A district court abuses its discretion if it applies an incorrect legal standard[.]").

In view of the *Roederer* factors, we also find genuine disputes of fact that preclude summary judgment on the basis of laches because, if resolved in favor of Agency, the disputed facts could "tilt the entire balance" of the factfinder's likelihood-of-confusion analysis. *Davis*, 430 F.3d at 903 (quoting *Duluth News–Tribune v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1096 (8th Cir. 1996)). We have noted that of the six likelihood-of-confusion

factors, "[a]ctual confusion in the marketplace is often considered the best evidence of likelihood of confusion." *Safeway Transit LLC v. Disc. Party Bus, Inc.*, 954 F.3d 1171, 1179 (8th Cir. 2020) (quoting *John Allan Co. v. Craig Allen Co.*, 540 F.3d 1133, 1140 (10th Cir. 2008)). Yet International, which bears the burden of proving the elements of laches, *see Roederer*, 569 F.3d at 859, presented little-to-no evidence of actual confusion in Missouri and Illinois, Agency's geographic markets, before 2012.

On the other hand, Agency presented evidence that there was minimal actual confusion until International changed its market strategy in 2012. Agency presented the sworn testimony of Gregory Wherry, Agency's owner, who stated Agency started noticing an uptick in consumer confusion around 2013. Wherry testified there "was really no [actual] consumer confusion" before then. Agency also presented voluminous telephone conversation records; declarations and depositions of Agency employees; and declarations of International customers or customer representatives, all evidencing instances of actual confusion after 2013, and none evidencing actual confusion before.[1] One particular Agency employee, who had been answering phone calls for Agency since the 1980s, testified that in 2015 Agency began getting "[a] lot more calls" of customers confusing International and Agency. Another Agency employee, who began working with Agency in 2012, recalled a significant increase in 2015 in telephone calls of customers confusing International and Agency. Viewed in the light most favorable to Agency, this evidence, combined with a general lack of evidence of actual confusion in the relevant geographic markets before 2012, supports the inference that there was little-to-no actual confusion before 2012 and a significant increase in actual confusion after 2013. We find such an inference could tilt the balance of the progressive encroachment analysis and thus represents a genuine dispute of material fact.

There are also disputed material facts as to the degree to which International's services competed with Agency's services. The district court relied on evidence that International was selling insurance directly to consumers for decades before 2012. The

---

[1]These records are not inadmissible hearsay as International suggests because they were not presented to prove the truth of the callers' statements, but to show the callers' states of mind at the time of the calls. *See* Fed. R. Evid. 801(c)(2).

district court especially relied on International's direct-to-consumer advertisements dating back to 1970. The district court also cited testimonial evidence that Agency was heavily involved in the commercial insurance market, a market in which International is undisputedly involved. From these facts, the district court concluded the parties were both using "AIG" to sell insurance in the direct-to-consumer and commercial markets long before 2012, triggering its finding of laches.

But the relevant factor under the *Roederer* analysis is not whether the parties competed, but the *degree* to which International's allegedly infringing services competed with Agency's services. *See Roederer,* 569 F.3d at 860. International's own corporate representative admitted to uncertainty about the number of consumers who receive International's television advertisements. And there is also little-to-no evidence as to the impact of International's advertisements before 2012 in Missouri and Illinois—the relevant markets here for analyzing likelihood of confusion. *See Oriental Fin. Grp., Inc. v. Cooperativa de Ahorro y Credito Oriental*, 698 F.3d 9, 24 (1st Cir. 2012) (holding an infringer's longstanding use of a trademark did not defeat progressive encroachment where the infringer failed to produce evidence of "how or in what degree [the trademark] was disseminated" in the relevant geographic market for the relevant timeframe).

In contrast, Wherry testified that when he first learned of International's use of "AIG" around 1984, he believed International "operated at a different section of the [insurance] business" than did Agency. Agency also cites testimony from International's corporate representative indicating AIG Direct, a direct-to-consumer division of International, went by the name Matrix Direct before 2011 and did not use the "AIG" name in advertising for life insurance until 2011. Wherry testified he believed it was AIG Direct's advertisements around 2013 that led to "a massive amount of consumer confusion taking place." Moreover, Agency is an insurance broker, while International creates insurance products that are often sold through brokers like Agency. In fact, Agency has sold International's insurance products.

The district court was not persuaded by this evidence, stating it could not accept Agency's characterization that the parties were not competitors before 2012. But, again,

-8-

the relevant inquiry under *Roederer* is the *degree* of competition. *Id.* at 860. And when viewed in a light most favorable to Agency, the evidence creates a genuine dispute about the degree to which International's services under the "AIG" name competed with Agency's services before 2012, which is material to determining if and when Agency had an actionable and provable infringement claim. Thus, again, we find a genuine dispute of material fact exists, which prevents application of laches at the summary judgment stage. *Cf. Select Comfort*, 996 F.3d at 936 (holding summary judgment for a trademark infringement claim was foreclosed where a material "question of fact exist[ed] as to the *level* of consumer sophistication") (emphasis added).

We also reject the district court's reliance on International's 1995 cease-and-desist letter to find Agency "has been cognizant of the risk of consumer confusion since 1995." Being "cognizant of the risk of customer confusion" is not the test for laches on trademark infringement claims. Rather, the test is whether the likelihood of confusion was sufficiently clear, under the *Roederer* six-factor analysis, to establish Agency had an actionable and provable claim at that time. The cease-and-desist letter simply does not satisfy this test when inferences are drawn in a light most favorable to Agency.

Agency was not required to take International's word for it in a cease-and-desist letter that there was a likelihood of confusion. And indeed, Agency's response to the 1995 letter indicated it was not sold on International's conclusion about the likelihood of confusion, referring to International's statements as "*allegations* of likelihood of confusion" (emphasis added). When viewed in the light most favorable to Agency, the letter merely establishes that Agency was aware of International's claim to the mark and its allegations of a likelihood of confusion. This does not establish that Agency had an actionable and provable trademark infringement claim against International.

In sum, the district court abused its discretion by not applying the proper analysis for progressive encroachment. Further, when we view the facts through the lens of the proper six-factor analysis, we find genuine disputes of material fact that preclude summary judgment on the basis of laches.

### III. Conclusion

For the reasons stated herein, we reverse the district court's grant of summary judgment to International.[2]

_____

<hr />

[2]Because we reverse the district court's summary judgment in favor of International, we necessarily reverse the district court's mootness-based denial of Agency's motion for partial summary judgment on the issue of likelihood of confusion. We leave resolution of the merits of Agency's motion to the district court to decide in the first instance. We also decline the invitation to decide Agency's claim that the district court erred by dismissing International's counterclaims without prejudice. Agency argues the counterclaims should be dismissed with prejudice because International acquiesced to Agency's use of the mark and unduly delayed in bringing its claims. Each of these issues requires resolution of fact-intensive inquiries the district court has yet to decide. Thus, we decline to address these issues for the first time on appeal. *See Alliant Techsystems, Inc. v. Marks*, 465 F.3d 864, 873 (8th Cir. 2006).